In the United States District Court
for the Western District of Pennsylvania

ASHLEY NICOLE GOLDINGER, )
 )
    *Plaintiff* )
 )
 ) Civ. No. 14-763
 )
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security, )
 )
    *Defendant* )
 )

## OPINION AND ORDER

### I. Introduction

This case is before us on appeal from a final decision by the defendant, Commissioner of Social Security ("the Commissioner"), denying Plaintiff Ashley Nicole Goldinger's claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The parties have submitted cross-motions for summary judgment. For the reasons stated below, we find that the Commissioner's decision is not supported by substantial evidence and therefore, we will deny Defendant's motion for summary judgment and grant Plaintiff's motion for summary judgment to the extent it seeks a remand to the Commissioner of Social Security for further evaluation consistent with this Opinion.

### II. Procedural History

Ashley Nicole Goldinger applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on July 18, 2011 with an alleged onset date of July 7, 2011. Plaintiff's claims were initially denied and Plaintiff filed a timely request for a

hearing, which was held before an Administrative Law Judge ("ALJ") on February 14, 2013; Plaintiff was represented by counsel and testified, as did an independent vocational expert.

By decision dated March 15, 2013, the ALJ determined that Plaintiff was not disabled under the SSA and therefore, not entitled to benefits under the SSA.

Ms. Goldinger filed a timely review of the ALJ's determination and the Appeals Council declined to review the ALJ's decision in a notice dated April 25, 2014. Having exhausted her administrative remedies, Plaintiff filed the instant action seeking judicial review of the final decision of the Commissioner of Social Security denying her DIB application.

### III. ALJ Decision.

Under the SSA, the term "disability" is defined as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months ...

42 U.S.C. § 423. A person is unable to engage in substantial activity when he:

> is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work....

42 U.S.C. §§ 423(d)(1)(A), (d)(2)(A).

In determining whether a claimant is disabled under the SSA, a sequential evaluation process must be applied. 20 C.F.R. § 416.920(a). See McCrea v. Commissioner of Social Security, 370 F.3d 357, 360 (3d Cir. 2004). The evaluation process proceeds as follows. At step one, the Commissioner must determine whether the claimant is engaged in substantial gainful activity for the relevant time periods; if not, the process proceeds to step two. 20 C.F.R. 20 C.F.R. § 416.920(b). At step two, the Commissioner must determine whether the claimant has a severe impairment or a combination of impairments that is severe. 20 C.F.R. § 416.920(c). If

2

the Commissioner determines that the claimant has a severe impairment, he must then determine whether that impairment meets or equals the criteria of an impairment listed in 20 C.F.R., part 404, Subpart P, Appendix. 1. 20 C.F.R. § 416.920(d).

The ALJ must also determine the claimant's residual functional capacity; that is, the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 416.920(e). If the claimant does not have an impairment which meets or equals the criteria, at step four the Commissioner must determine whether the claimant's impairment or impairments prevent him from performing his past relevant work. 20 C.F.R. § 416.920(f). If so, the Commissioner must determine, at step five, whether the claimant can perform other work which exists in the national economy, considering his residual functional capacity and age, education and work experience. 20 C.F.R. § 416.920(g). See also McCrea, 370 F.3d at 360; Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000).

As stated, in this case, by decision dated March 15, 2013, the ALJ denied Plaintiff's Title II application for a period of disability and disability insurance benefits. R. 11. He concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act from July 7, 2011 through the date of the decision. R. 11. In denying the application, the ALJ made a number of findings of fact and conclusions of law. First, he concluded that "[t]he claimant meets the insured status requirements of the Social Security Act through December 31, 2016" and that she "has not engaged in substantial gainful activity since July 07, 2011, the alleged onset date." R. 13. Next he concluded that the claimant "has the following severe impairments: low back pain, asthma, obesity, depression, and anxiety." R. 14. He further explained:

> I also considered the effects of the claimant's weight under Social Security Ruling 02-01p., in the sequential evaluation process as it relates in combination with her other diagnoses and her overall level of functioning.

3

> The record shows that the claimant had gained weight as she continues to be treated. She weighed 235 pounds at 5'1" tall. Given the claimant's current weight, any limits attributable to this issue are covered by light work in the within RFC.
>
> Although the claimant has some physical and mental limitations, the record shows that the claimant's symptoms were not of such severity as to preclude her from working at a job within the Residual Functional Capacity that has been determined. Further, the medical evidence of record does not corroborate the claimant's allegations regarding the severity of her mental impairments.
>
> I find that the claimant's impairments affect her ability to function but are not of the severity to prevent her from working on a full time basis.

R. 14 (citation omitted). The ALJ then found that none of the claimant's impairments or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). R. 14. Specifically, he considered Claimant's low back pain, asthma, and mental impairments. R. 14-17.

> The ALJ ultimately concluded:
>
> After careful consideration of the entire record . . . that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) not requiring working in areas of concentrated fumes, odors, dust, gases, temperature extremes, or other similar environmental irritants. She is limited to only routine, repetitive tasks, only occasional judgment, decision-making, and changes in the work setting and only occasional interaction with the public, coworkers and supervisors.

R. 18. The ALJ explained that his conclusion was based upon consideration of all of Claimant's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, as well as opinion evidence. R. 18. He further explained: "After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." R. 20-21.

4

More specifically, concerning Plaintiff's mental health treatment the ALJ stated:

> The record shows that the claimant receives her mental health treatment from Staunton Clinic in Rochester, Pennsylvania. Clinical notes dated July 15, 2011, through January 07, 2013, show that she is been diagnosed with generalized anxiety disorder with agoraphobia. She has demonstrated a weight gain throughout her course of treatment, which appears to be related to the prescriptive medicine that she takes. She has joined a gym and is still helping to care for her father. It was noted that her mood is stable and that she is less irritable in a note dated November 14, 2011, in Exhibit 7-F. The claimant exhibits paranoia with hallucinations both auditory and visual. She also experiences frequent crying spells. On January 07, 2013, Ms. DiCuccio completed a medical source statement in which she opined that the claimant was markedly to extremely limited by her mental impairments.
>
> I gave little weight to the opinion of Ms. DiCuccio since the clinical data from Staunton Clinic does not support her opinion. The claimant had been working all along while she was receiving mental health treatment. Further, Ms. DiCuccio's is a certified registered nurse practitioner and I have accorded her opinion some weight but her opinion is inconsistent with the medical evidence of record.

R. 21. Concerning Plaintiff's physical health treatment, the ALJ found:

> The claimant has also complained of an irritable bowel syndrome condition. She was exhibiting frequent diarrhea and was treated by gastroenterologist, Roberto Inglese, M.D. Clinical notes dated January 09, 2012, through June 01, 2012, showed that a colonoscopy resulted in findings that were within normal limits. It was recommended that the claimant stopped smoking and adjust her diet. Dr. Inglese noted that she was 5'2" and weighed 270 pounds at the time. This condition appears to be under reasonable control (Exhibit 6-F).
>
> J.L. Funkhouser M.D. also treated the claimant, for complaints of low back pain. Clinical notes dated March 16, 2012, through January 21, 2013, showed that she had some disk space narrowing but the treatment was simply prescriptive pain medicine. There was no plan for surgery or any other treatment beyond these conservative measures.

R. 21.

The ALJ also discussed the findings of two consultative medical professionals who examined Claimant:

> The record shows that consultative, psychologist, Tod Marion, Ph.D., examined the claimant on a consultative basis. A report by Dr. Marion showed that the claimant was seen on October 13, 2011. It was noted that the claimant complained

5

of a depressive disorder and anxiety. She also told Dr. Marion that she had a history of substance abuse. The claimant was diagnosed with anxiety with agoraphobia, a major depressive disorder and a substance abuse disorder in remission. Dr. Marion noted a traumatic childhood and adolescence. Dr. Marion found that the claimant was not impaired in understanding, remembering and carrying out short, simple instructions but moderately limited in handling detailed instructions. She was not limited in making judgments and decisions and was moderately limited in dealing with others, including the public. Dr. Marion also opined that the claimant was markedly limited in dealing with work changes and being in a work setting (Exhibit 3-F).

I gave some weight to the opinion of consultative psychologist, Tod Marion, Ph.D. Dr. Marion opined that the claimant was slightly to moderately limited in functioning due to her mental problems but was markedly limited in the ability to work, which is inconsistent with other medical evidence of record.

Consultative examiner, Daniel G. Christo, D.O., examined the claimant on August 16, 2011, at the request of the State Agency. Dr. Christo noted that the claimant gave a vague description of her back pain. She told him that she had back pain for a long time that she had pain when doing housework or lifting or most any other activity. She told the doctor that she had asthma and had a history of alcohol abuse. After examining the claimant, Dr. Christo, noted that the claimant showed full range of motion. The claimant's spine was described as having full range of motion with no evidence of radicular or nerve entrapment. All deep tendon reflexes were present and normal, as were sensations and motor responses and there were no signs of muscle strength deficiency. Dr. Christo's assessment was a history of bipolar disorder with anxiety and oppression with no overt signs of thought disorder, many are suicidal ideation or depression, a vague history of asthma with unremarkable pulmonary examination results. A pulse oximetry measurement was 98.6 percent on room air. Finally, he noted her morbid obesity (Exhibit 4-F).

Dr. Christo also provided a Functional Capacity Evaluation in which he opined that the claimant's impairment(s) limited her ability to lift and carry up to twenty-five pounds frequently. Dr. Christo opined that the claimant had no limit as to sitting, standing and walking and that she could perform postural activities on a frequent basis. He opined that the claimant must avoid areas of poor ventilation, temperature extremes, wetness, dust, fumes, odors and gases. Further, he opined that the claimant had no other limitations (ID.).

R. 21-22.

The ALJ also discussed a November 7, 2011 Disability Determination Explanation by a state agency physician and state agency psychologist:

> After evaluating the record, it was the opinion of the State Agency physician that the claimant was limited to performing work at no more than the light exertional level. The State Agency psychologist performed a PRTF evaluation and found that the claimant was only mildly to moderately limited by her mental impairments (Exhibit 1-A).
>
> The State Agency medical consultant's physical assessment and psychological consultant's mental assessment are given great weight because they are more consistent with the record as a whole and evidence received at the hearing level does not show that the claimant is more limited than determined by the State Agency consultants.

R. 22.

The ALJ summarized his findings as follows:

> In determining the above Residual Functional Capacity, I carefully considered the clinical data of the claimant's treating physicians and mental health therapist. The severity of symptoms of the clinical data from these treatment providers did not reflect the severity of symptoms that would be disabling. The claimant's treatment was the use of prescribed medicine and mental health therapy. I find that the documented clinical data of record is not disabling and this clinical data was carefully considered in determining the within Residual Functional Capacity.
>
> The claimant does a variety of daily activities. She alleges emotional and mental problems, anxiety, and depression, but has never been hospitalized. She has complained of back pain. She had no surgeries, no physical therapy, no injections, and takes only prescriptive ibuprofen for pain relief. The claimant said that she isolates herself but still has some friends and associates with family members. She has a driver's license and likes to use her computer. I observed that the claimant appeared fully alert, did not appear unduly nervous, and responded to questions intelligently.

R. 22-23.

**IV. Standard of Review.**

The Congress of the United States provides for judicial review of the Commissioner's denial of a claimant's benefits. See 42 U.S.C. § 405(g)(2012). This court must determine whether or not there is substantial evidence which supports the findings of the Commissioner.

7

See id. "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971). This deferential standard has been referred to as "less than a preponderance of evidence but more than a scintilla." Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). This standard, however, does not permit the court to substitute its own conclusions for that of the fact-finder. See id.; Fargnoli v. Massonari, 247 F.3d 34, 38 (3d Cir. 2001) (reviewing whether the administrative law judge's findings "are supported by substantial evidence" regardless of whether the court would have differently decided the factual inquiry). So long as the ALJ's decision is supported by substantial evidence and decided according to the correct legal standards, the decision will not be reversed. Id. To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. 5 U.S.C. § 706(1)(F) (2012).

**V. Parties' Legal Positions.**

    **A. Plaintiff's Position.**

Plaintiff's position is that ALJ's decision is not supported by substantial evidence and she is disabled because she cannot work on a full-time basis due to anxiety/agoraphobia. Plaintiff argues that the ALJ erred in concluding that she was not disabled because the substantial evidence of record, including the medical evidence and Plaintiff's testimony at the hearing, established that she is disabled. More specifically, in support of this argument, she first contends that the evidence of record shows that she "has been unable to meet employers' expectations with respect to attendance at all times relevant hereto." Id. at p. 16. Next she emphasizes that she has been diagnosed with panic disorder with agoraphobia by Dr. Tod Marion, and with generalized anxiety with agoraphobia, which eventually was changed to a diagnosis of

8

generalized anxiety disorder/anxiety disorder, by treating certified registered nurse practitioner, Ms. Elizabeth DeCicco. Id. at pp. 16-17. Plaintiff further argues that the medical records of the Staunton Clinic set forth numerous examples of her complaints of significant anxiety and difficulties in leaving the home to, for example, go to a store. Id. at p. 17. Additionally, Plaintiff argues that while there are instances where she was able to leave her home to go to doctors' appointment and to spend time with a friend and her children, that such occasions were rare and that the clear focus of the treatment at the Staunton Clinic was to assist the Plaintiff in improving to the point that she could leave her home and function in society on an appropriate bases and yet, "the difficulties for the Plaintiff were so debilitating that she could not even emotionally tolerate the persistent efforts of her therapist to help her to overcome these difficulties and ultimately stopped going even to therapy." Id. at p. 17.

Plaintiff also argues that her hearing testimony fully supported the conclusion that she would be absent from work in excess of employers' tolerances and/ or would consistently be late to work and/or be unable to consistently complete a work day, citing numerous example from her testimony at the ALJ hearing. Id. at p. 17-18. "Again, while there were rare occasions when the Plaintiff was able to leave her home and spend time with people or accomplish errands, it is clear from the administrative record that the Plaintiff would be unable to miss only one day or less of work/month and would be unable to consistently arrive at work on time and/or stay for the entire work day." Id. at p. 18.

Plaintiff also argues that the vocational expert testified that an individual who was not able to tolerate the stressors associated with even simple, routine work would be unable to maintain full-time employment and "[i]n this regard, both the Plaintiff's treating nurse practitioner as well as the consulting psychologist, Dr. Marion, have indicated the Plaintiff's

9

inability to maintain work stressors, as reflected in the 'marked' limitations in this domain as assessed by Dr. Marion, and the 'extreme' limitation in the domain as assessed by the Plaintiff's nurse practitioner." Id. at p. 18

Plaintiff further argues that the ALJ's decision is not supported by substantial evidence because he "failed to adequately discuss the Plaintiff's testimony as well as the assessments of Dr. Marion and the nurse practitioner with respect to the resolution of the issue of whether or not the Plaintiff would be absent from work in excess of employers' allowances or would be unable to tolerate the stressors associated with even simple, routine work." Id. at p. 19. "[B]oth Dr. Marion and the Plaintiff's nurse practitioner indicated that the Plaintiff would be unable to tolerate on a consistent basis the stressors associated with even simple, routine work. In this regards, as set forth below, the [ALJ] acknowledged that assessments of the nurse practitioner and Dr. Marion did not support a conclusion of not disabled; however, ... contrary to Burnett and Johnson the decision did not provide sufficient explanation as to why the opinions of the individuals were rejected." Id. at pp. 19-20. See also Id. at p. 20 ("with respect to both assessments the [ALJ] did not adequately explain how the opinions of these individuals were inconsistent with the medical evidence of record.").

Plaintiff also argues that in finding her not disabled the ALJ "failed to adequately address critical aspects of the Plaintiff's testimony which strongly supported a finding of disabled pursuant to Social Security Ruling 96-8 and the vocational expert's testimony. ... [I]n only making general statements that the Plaintiff performed activities of daily living and socialized with friends and not addressing, for example, the Plaintiff's specific testimony that she does not go to malls, restaurants or stores, does not go to family functions, and leaves to return home after

10

brief periods outside of her home, the [ALJ's] decision is contrary to the holding of Burnett. Id. at p. 21.

Finally, Plaintiff contends that "because the Plaintiff's credibly-established limitations with respect to the inability to maintain attendance or to tolerate stress in even simple, routine work were not incorporated into the hypothetical questions adopted by the [ALJ] as the Plaintiff's residual functional capacity, the vocational expert's testimony cannot be relied upon in connection therewith as substantial evidence in support of a denial of benefits to the Plaintiff." Id. at p. 21.

### B. The Defendant Acting Commissioner's Position.

The Defendant contends that the ALJ's decision is supported by substantial evidence and should be affirmed. In support of this positon, he argues first that "Plaintiff relies entirely on her own subjective complaints, rather than any objective medical evidence, in support of her claim" and [m]oreover, substantial evidence supports the ALJ's finding that Plaintiff's subjective complaints about the extent, persistence, and limiting effects of her symptoms lacked credibility." Defendant's Supporting Brief, p. 10. In particular, Defendant contends:

> [s]ignificantly, the medical records and Plaintiff's activities are inconsistent with her claims. Plaintiff's treatment records at Staunton show that Nurse DeCicco and Plaintiff's therapist [Ms. Kaminski] consistently found that Plaintiff's appearance was appropriate, her attitude was cooperative, and her psychomotor activity, her thought organization, and her speech were normal. Her impulse control was almost always good and with proper treatment her mood was euthymic. Her GAF ranged from 56 to 60, consistent with only moderate symptoms, and a GAF of 60 is only one point away for the range corresponding to "some mild symptoms."
> 
> Similarly, the evidence shows that when Plaintiff complied with treatment, her condition improved. Plaintiff claimed that even with medication and treatment, she still woke up every morning feeling like "I can't do anything". But the records show otherwise. As early as August of 2011, Plaintiff reported fair progress with medication. In September of 2011, Nurse DeCicco found that Plaintiff's sadness improved, and her depressive symptoms and irritability decreased. In October of 2011, Plaintiff was "doing well" with decreased anxiety

11

on her medication. In November of 2011, Nurse DeCicco found that Plaintiff was making slow but steady progress. Plaintiff symptoms showed improvement with medication management even after she stopped going to therapy. In July of 2012, Nurse DeCicco noted that Plaintiff's "meds seem to be working well" and her anxiety was "better than before". In August of 2012, Plaintiff reported weight gain but was "[o]therwise doing well". By January of 2013, Plaintiff acknowledged doing better, with a better mood, when taking Risperdal. Plaintiff's GAF was initially 56, and increased slightly to 58. Thus, Plaintiff's anxiety improved.

In addition, Plaintiff was able to maintain her activities and friendships. Plaintiff was friends with three sisters, who Plaintiff described as "like my second family". Plaintiff had a friend who accompanied her to her doctor's visits. She visited with family and friends, went out with her friend and her kids, and had her sister over for pizza and games. She testified that "Michael" was a family friend, but the record shows that she had a romantic relationship with him and even lived with him during some part of the relevant period. Plaintiff also joined a gym and obtained a driver's license during the period of alleged disability.

She also worked during the relevant period, caring for her father for up to 16 hours a week. "Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did." 20 C.F.R. § 404.1571; see also Sigmon v. Califano, 617 F.2d 41, 42-43 (4th Cir. 1980) ("The general rule is one amply supported by common sense: the [Commissioner] can consider work done by the claimant after the alleged onset of disability as tending to show that the claimant was not then disabled"). She cut her hours not due to disability, but due to a desire to earn less money in order to maintain her health insurance.

Defendant's Supporting Brief, pp. 11-13 (citations omitted).

The Defendant next argues that "the record shows that the ALJ sufficiently discussed the medical assessments in the record, and substantial evidence supports the ALJ's discussion:" Id. at p. 14. Specifically, Defendant contends:

Here, reading the decision as a whole, the ALJ sufficiently set forth his analysis of the two medical source opinions, and also discussed Nurse DeCicco's opinion even though she is not an acceptable medical source. Significantly, Dr. Mi[l]ke's opinion supports the ALJ's determination, as he found that Plaintiff experienced no more than moderate limitations in various categories of workplace functioning, including the ability to get along with others, respond appropriately to supervision, and maintain socially appropriate behavior. Dr. Mi[l]ke explained

that Plaintiff retained the ability to handle simple instructions and could perform simple, routine, and repetitive work.

In addition, the only other opinion from an acceptable medical source, Dr. Marion's opinion, largely supports the ALJ's opinion. The ALJ explained that he gave some weight to Dr. Marion's opinion, and incorporated into the RFC Dr. Marion's finding that Plaintiff had moderate limitations in concentration, persistence, and pace. However, the ALJ disagreed with Dr. Marion's finding that Plaintiff was markedly limited in dealing with work changes and being in a work setting because this was inconsistent with the other evidence of record. Indeed, this finding conflicted with Dr. Mi[l]ke's opinion, as well as Plaintiff's treatment records at Staunton. As discussed in more detail above, Plaintiff's treatment records at Staunton showed that Plaintiff's GAF scores were consistently in the moderate range, Plaintiff improved with treatment, and Plaintiff's appearance was appropriate, her attitude was cooperative, and her psychomotor activity, thought organization, and speech were normal. Thus, the ALJ appropriately accounted for the moderate limitations set forth by Dr. Marion, and gave less weight to Dr. Marion's findings of marked limitations. See, e.g., Wilkinson v. Comm'r of Soc. Sec., 558 F. App'x 254, 256 (3d Cir. 2014) (finding an ALJ need not adopt every finding of a doctor, even where the doctor gives weight to the opinion); Razey v. Colvin, Civ.A.No. 14-23, 2014 WL 4792150, at *2 (W.D. Pa. Sept. 23, 2014) ("The ALJ, however, is not required to adopt a medical opinion wholesale; rather the ALJ must consider the reports and weigh it along with other evidence in the record.").

Finally, the ALJ also discussed Nurse DeCicco's opinion, even though it is not a medical opinion, explaining that he gave little weight to the opinion because it was inconsistent with the medical evidence and Plaintiff was working the entire time she was receiving medical treatment. The ALJ further noted that Nurse DeCicco is a certified registered nurse practitioner. As such, she is not an "acceptable" medical source within the meaning of the Social Security regulations. See Chandler, 667 F.3d at 362 ("the ALJ was not required to consider DeWees's opinion at all because, as a nurse practitioner, she is not an 'acceptable medical source'") Indeed, her opinion does not constitute a "medical opinion" because she is not an acceptable medical source. Moreover, Nurse DeCicco's own treatment records conflict with her opinion that Plaintiff had marked or extreme limitations. Indeed, Nurse DeCicco issued her opinion in the same month that she assessed Plaintiff's GAF as 58, and found that Plaintiff's appearance, speech, and impulse control were normal, her mood was euthymic, her impulse control was good, she was fully oriented, and she had no delusions, hallucinations, or suicidal/homicidal ideation. Overall, Nurse DeCicco's notes show that Plaintiff improved with treatment, had primarily normal mental status examinations with some findings of anxiety or dysphoric mood, and had moderate limitations. Furthermore, as discussed above, Plaintiff was able to work throughout the relevant period, and reduced her hours for reasons unrelated to her medical condition.

13

Id. at pp. 15-17 (internal citations omitted).

**VI. Court's Analysis.**

This Court's role is to determine whether or not there is substantial evidence which supports the finding of the Commissioner that Ms. Goldinger is not disabled under the SSA. When determining a claimant's residual functional capacity, an ALJ must consider all of the relevant evidence. Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001). Relevant evidence includes "descriptions and observations of your limitations from your impairments(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons." 20 C.F.R. § 416.945(a)(3). The ALJ must reach specific findings regarding all pertinent medical evidence and reconcile any conflicts. Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 126 (3d Cir. 2000). If any particular evidence is rejected, the ALJ must provide an explanation. Id. at 126. The ALJ's residual functional capacity finding must be accompanied by a "clear and satisfactory explication of the basis on which it rests." Fargnoli, 247 F.3d at 41 (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)).

Thus, it is well established that the Commissioner "may properly accept some parts of the medical evidence and reject other parts, but []he must consider all of the evidence and give some reason for discounting the evidence she rejects." Adorno v. Shalala, 40 F.3d 43, 48 (3rd Cir. 1983). Without such an explanation, the court "cannot tell if significant probative evidence was not credited or simply ignored." Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).

Upon review of the Record, the Court finds that the ALJ failed to sufficiently analyze the medical records of the Staunton Clinic such that this Court can determine whether "significant probative medical evidence was not credited or simply ignored." Id. By way of example, no mention was made of Ms. DeCicco's observations at the initial July 15, 2011 evaluation that

14

Plaintiff had a dysthymic mood, was anxious and tearful, and had a flat affect. R. 238. Nor was any mention made of Ms. DeCicco's observations at Plaintiff's July 18, 2011 appointment that Plaintiff had a tearful affect and that she was anxious before the appointment. R. 250. Nor was any mention made of therapist Ms. Kaminski's observations at Plaintiff's August 1, 2011 appointment that Plaintiff was in a better mood now that she was on medication, but that her impulse control was deemed to be poor and physical violence was noted. R. 248. Nor was any mention made of Ms. DeCicco's observations that at Plaintiff's August 8, 2011 appointment she had a dysphoric mood, poor impulse control, and fair insight. R. 247. Nor was any mention made of Ms. Kaminski's observations at Plaintiff's August 24, 2011 appointment that Plaintiff had a tearful affect and a depressed and irritable mood. R. 245. Nor was any mention made of Ms. DeCicco's observations at Plaintiff's August 26, 2011 appointment that Plaintiff had a dysthymic mood, a flat affect with tears and auditory hallucinations. R. 244. Nor was any mention made of Ms. Kaminski's observations at Plaintiff's August 29, 2011 appointment that Plaintiff had paranoid delusions, visual and auditory hallucinations, and that Ms. DeCicco found it significant to note that Plaintiff came to the appointment alone and smiled. R. 243. Nor was any mention made that at Plaintiff's October 17, 2011 visit, while Plaintiff's mental status exam was normal, Ms. DeCicco still found it necessary to increase Plaintiff's dosage of Lamictal. R. 294. Nor was any mention made of Ms. Kaminski's observations at Plaintiff's October 31, 2011 appointment that Plaintiff's mental status evaluation was unremarkable except for her impulse control; it was listed as fair because Plaintiff "hits people in argument," and that Plaintiff had been consistently having her medication increased and reported improvement but was still having anxiety symptoms, especially when she leaves her house "as she 'has issues with control' and feels paranoid around strangers. R. 295. Nor was any mention made of Ms. Kaminski's comments at

15

Plaintiff's November 15, 2011 visit that Plaintiff's affect was tearful and anxious, her mood was low, she was having mood swings, and she was hearing voices with a negative message, and that Plaintiff was psychiatric medication complaint." R. 292-293. Nor was any mention made of Ms. DeCicco's observations at Plaintiff's December 12, 2011 appointment that Plaintiff's mood was anxious, and that Ms. DeCicco added Paxil to Plaintiff's medication regime. R. 288-289. Nor was any mention made of Ms. DeCicco's observations at Plaintiff's March 12, 2012 appointment that Plaintiff reported that she was hearing voices and that Ms. DeCicco adjusted Plaintiff's medications upward. R. 286. Nor was any mention made of Ms. DeCicco's observations at Plaintiff's April 23, 2012 appointment that Plaintiff was still complaining about some mood lability, but was having more good than bad days and no voices, she was spending time with family and friends, her mood was noted as being slightly dysphoric, and Ms. DeCicco adjusted Plaintiff's medications upward and recommended therapy. R. 285. Nor was any mention made of Ms. DeCicco's observations at Plaintiff's August 27, 2012 appointment that Plaintiff's mood was slightly dysphoric, Plaintiff's affect was flat, and Plaintiff's medications again were adjusted. R. 282-283. Nor was any mention made of Ms. DeCicco's observations at Plaintiff's September 24, 2012 appointment that Plaintiff was experiencing lots of anxiety, and therefore, that Ms. DeCicco agreed to start Plaintiff on Prozac, wean her off Effexor, and increase her dosage of Lamictal and Klonopin. R. 282. Nor was any mention made of Ms. DeCicco's observations at Plaintiff's December 10, 2012 appointment that Plaintiff's mood was anxious, and Ms. DeCicco had encouraged Plaintiff to attend Christmas and her birthday party. R. 280.

Instead, the totality of the ALJ's discussion of Plaintiff's medical records from the Staunton Clinic was: "[sh]e has demonstrated a weight gain throughout her course of treatment, which appears to be related to the prescriptive medicine that she takes. She has joined a gym and

16

is still helping to care for her father. It was noted that her mood is stable and that she is less irritable in a note dated November 14, 2011, in Exhibit 7-F. The claimant exhibits paranoia with hallucinations both auditory and visual. She also experiences frequent crying spells." R. 21.

In so concluding, this Court is not holding that the ALJ was required to discuss and evaluate each and every piece of evidence in the Record relevant to Plaintiff's mental health impairments. But the end result of the ALJ's summary treatment of Plaintiff's mental health records and his failure to discuss in greater detail such a large amount of relevant, probative medical evidence left this Court, as stated above, unable to tell "if significant probative evidence was not credited or simply ignored." Cotter, 642 F.2d at 705.

Additionally, the Court is concerned with the ALJ's reliance on the November 14, 2011 Staunton Clinic treatment note, which he summarizes as "[i]t was noted that her mood is stable and that she is less irritable in a note dated November 14, 2011, in Exhibit 7-F." R. 21. In fact, that treatment note does not state that Plaintiff's mood was stable and that she was less irritable. Rather, the Psychiatric Progress Note from November 14, 2011 states: "Past week some bad days. Hard to live at Dad's but able to say more good days than bad. Slow but steady progress." R. 292. It further indicates that Plaintiff's mood was "Dysphoric," Plaintiff's medications were increased and therapy was recommended. R. 292.

In conclusion, "[d]espite the deference due to administrative decisions in disability benefit cases, 'appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir.2000) (quoting Smith, 637 F.2d at 970). After careful consideration of the evidence of Record and the parties' briefs, the Court finds that for the reason stated above, the Commissioner's conclusion that Plaintiff is not disabled under the

SSA is not supported by substantial evidence. We further hold, however, that Plaintiff has not established on the existing Record that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." See Ambrosini v. Astrue, 727 F.Supp.2d 414, 432 (W.D. Pa. 2010) (an immediate award of benefits is justified only where "the evidentiary record has been fully developed," and where "the evidence as a whole clearly points in favor of a finding that the claimant is statutorily disabled."). Accordingly, this matter must be remanded to the Commissioner for further review of the medical evidence relative to Plaintiff's mental health consistent with this Opinion. An appropriate Order follows:

AND NOW, this 30th day of September, 2015, it is hereby ORDERED, ADJUDGED and DECREED that Defendant's Motion for Summary Judgment [ECF No. 10] is DENIED and Plaintiff's Motion for Summary Judgment [ECF No. 8)] is GRANTED to the extent it seeks a remand to the Commissioner of Social Security for further evaluation consistent with this Opinion.

It is further hereby ORDERED, ADJUDGED and DECREED that this matter shall be remanded to the Commissioner of Social Security for further evaluation consistent with the Opinion of the Court.

Maurice B. Cohill, Jr.
Senior District Court Judge